■ In the Matter of MAXWELL-KATES, INC., Respondent, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Appellant. [601 NYS2d 292] —Order and judgment (one paper) of the Supreme Court, New York County (Charles E. Ramos, J.), entered May 18, 1992, which, *inter alia,* granted petitioner's application for a major capital improvement (MCI) rent increase is unanimously modified, on the law and facts, and the petition granted, only to the limited extent of remanding the matter to the respondent agency for further proceedings to enable petitioner to supply the requested documentation and the second and third decretal paragraphs granting petitioner substantive relief vacated, and otherwise affirmed, without costs or disbursements.

Petitioner, which owns and manages real property, filed three applications for MCI rent increases for the premises, following a substantial renovation for which it paid its general contractor over $750,000. Most of the work performed did *not* seek MCI treatment but only $300,000 of the total contract price was deemed attributable by the petitioner to work eligible for MCI rent increases. The application was supported by a copy of the contract with the general contractor, proof of payment to him, and a list prepared by the general contractor assigning a value to the items of work performed. Various tenants responded to the petitioner's applications, asserting that the petitioner sought a rent increase for items that constituted repairs, and not improvements; that the petition was not sufficiently documented; and that the costs were inflated.

Thereafter, the District Rent Administrator requested additional information, including copies of the subcontracts, and copies of the cancelled checks paid to the subcontractors. Petitioner, through counsel, responded that the requested documentation was not in its possession, and that it was irrelevant, in any event, as the payments to the general contractor established the cost of the work performed.

The Administrator, some 2½ months later, again sought the further documentation, as well as an explanation of a discrepancy in the number of apartments as indicated by comparisons of the rent rolls for various years. Petitioner responded that the number of apartments was consistent with the certifi-

cate of occupancy; that it had no explanation for the inconsistency in the room count, except that some apartments had interior walls removed without increasing the number of units in the building; and again, that the subcontracts and proof of payment to the subcontractor were not in its possession, and were, in any event, irrelevant.

By orders issued July 21, 1989, the Administrator denied the applications for failure to provide the requested documentation.

A petition for administrative review was thereafter denied by the Commissioner, on the ground, *inter alia,* that "the documentation submitted by the owner does not include sufficiently detailed information regarding the nature and scope of the work performed to allow for a determination as to whether such work constituted major capital improvements." The Commissioner also observed that petitioner failed to submit permits and approvals for the work, as well as cancelled checks for certain minor work outside of the scope of the main contract.

The IAS Court granted the petition, reasoning that absent self-dealing, there was no basis to require production of the subcontracts. In entering judgment, the court granted an MCI increase of $56.69 per room per month.

While respondent contends that the further documentation was required due to suspected collusion between the owner and general contractor, the record reflects only the request for information, and no stated basis for its production. It is true that in cases of alleged collusion between related parties, the need for further information would be readily apparent. However, it is *not* true that absent an allegation of collusion between related parties, the respondent has no need or right to require further documentation. As noted by respondent, since the MCI rent increases are permanent, the owner has ample motivation to inflate the value of those expenses over repairs, especially where, as here, one undifferentiated contract includes expenses for *both* improvements and repairs.

The contract between the owner and general contractor may be lengthy, but it does not provide a detailed breakdown of the cost of the MCIs as opposed to the cost of repairs. The list submitted by the general contractor for this purpose need not be accepted by the agency as determinative of the issue. The agency may properly require further documentation to insure that the apportionment of costs in this regard is correct. Thus, an examination of the underlying subcontracts

could determine the reasonableness of these expenses to insure that they are not inflated, and that expenses have not been shifted from repairs, which are not compensable, to improvements. The mere fact that petitioner does not claim more than $300,000 in MCIs does not, in and of itself, demonstrate "good faith", as petitioner contends.

While in other cases, submission of the main contract and a visual inspection might suffice, in this particular case, given the fact that the apportionment of expenses between repairs and improvements is supported, in essence, only by the contractor's two page list of various elements of the job and their purported cost, the agency's request for further documentation was not unreasonable. We also note that petitioner has never suggested that it could not obtain copies of the subcontracts or the other required proofs, or that it was unduly burdensome for it to do so.

Apart from the reasonableness of the request for further documentation, the IAS Court also erred in granting the petition without remanding to the agency. In doing so, the court usurped the agency's role in determining the suitability of the work performed, as distinct from its bona fide costs. Further, by calculating the per room increase, the court precluded the agency from further inquiry into the discrepancy in the room count. Concur—Sullivan, J. P., Rosenberger, Asch and Rubin, JJ.